Filed 6/21/13  P. v. Gonzalez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JONATHAN GONZALEZ,<br><br>    Defendant and Appellant. | G046382<br><br>(Super. Ct. No. 10CF2043)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William R. Froeberg, Judge.  Affirmed in part and reversed in part.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jonathan Gonzalez of one count of active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a); all further statutory references are to this code; count 5), and four counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 6, 7, 8, 9).  The jury also found Gonzalez inflicted great bodily injury in the commission of count 6 (§ 12022.7 subd. (a)), personally used a firearm in the commission of counts 6, 7, 8, and 9 (§ 12022.5, subd. (a)), and committed all of these offenses for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)).  The jury found Gonzalez not guilty of four counts of willful, deliberate and premeditated attempted murder (§§ 664, subd. (a), 187 subd. (a); counts 1, 2, 3, 4).

The court sentenced Gonzalez to a total prison term of 22 years consisting of the upper term of nine years on count 6, plus a consecutive 10 years for the section 186.22, subdivision (b)(1) gang enhancement and a consecutive three years for the section 12022.7, subdivision (a) great bodily injury enhancement.  The court also imposed concurrent terms on counts 7, 8, and 9, imposed a three-year term for count 5 and stayed it pursuant to section 654, and struck the firearm use enhancements as to counts 6, 7, 8, and 9 for sentencing purposes pursuant to section 1170.1, subdivision (f).

Gonzalez challenges the sufficiency of the evidence to support the active participation conviction in count 5, and the gang enhancement findings as to counts 6, 7, 8, and 9.  We reverse as to count 5 only and affirm the judgment in all other respects.

FACTS[1]


*1. The Shooting*

On July 25, 2010, Jovanni Martinez, Anibal Alejandre, Victor Becerra, and Raul De La Sancha walked from an apartment complex on McFadden Avenue to a nearby 7-Eleven to buy beer and snacks. As they were making their purchases, Martinez noticed Gonzalez near the front door. When Alejandre came out of the store, he heard Gonzalez say, "Lopers gang." As Martinez walked by, Gonzalez asked if he "banged." Martinez denied any gang affiliation. He and Gonzalez exchanged profanities before Gonzalez pulled a semiautomatic handgun from his waistband, chambered a bullet, and pointed the gun at Martinez's face. Martinez indicated there was no need for guns and said, "That's why we have our hands." Gonzalez made no reply, and Martinez and his friends walked back toward the apartment complex.

As they arrived at the apartment complex Martinez and his friends heard someone yell, "Lopers," and then heard five or six gunshots. One of the bullets struck Martinez in the back. Although Martinez claimed he did not look back to see who had fired the shots, he identified Gonzalez from a photographic lineup as the person who confronted him at the 7-Eleven.

Investigating officers found five spent shell casings from a semiautomatic firearm at the scene of the shooting. They also retrieved surveillance videos from the 7-Eleven store and from the apartment complex.


*2. Gonzalez's Pretrial Statement*

Gonzalez was quickly arrested and transported to the Santa Ana Police Department. He waived his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436)

---

[1] We present the facts in the light most favorable to the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

and agreed to talk to the two detectives investigating the case. Initially, he denied having a confrontation with Martinez and denied being involved in the shooting. When shown photographs taken from the 7-Eleven surveillance video, Gonzalez admitted interacting with Martinez and his friends at the store, but claimed they challenged him by calling out "Little Minnie," which is the name of another Santa Ana criminal street gang. Gonzalez claimed he ignored the challenge and went inside the store. After making his purchase, Gonzalez said he rode his bicycle to a friend's home and did not ride through the area where the shooting occurred.

After continued questioning, Gonzalez admitted riding his bicycle through the area of the shooting and hearing gunshots, but he claimed he did not fire the shots and said he saw two other people who might have been involved in the shooting. When shown photographs taken from the apartment complex surveillance video, Gonzalez admitted he fired four or five shots at Martinez and his friends, and he said he did so because he was angry about being disrespected by them.

*3. Gang Expert Testimony*

At trial, Santa Ana Police Detective Roland Andrade testified as the prosecution's gang expert. Andrade described the Lopers gang as one of Santa Ana's many Hispanic criminal street gangs. As of July 2010, he believed the gang had well over 50 members. The gang claimed a territory that included McFadden Avenue and they frequented the 7-Eleven where the confrontation took place. The Lopers gang colors are black, white, and grey, and they wear clothing in these colors to demonstrate their gang affiliation. According to Andrade, the primary activities of Lopers are robberies and felony assaults, including assaults with firearms.

Andrade testified that on June 15, 2006, a jury convicted Edgar Omar Gomez of active participation in a criminal street gang and second degree murder for a criminal street gang purpose (Gomez murder), and found true he was vicariously armed

4

with a firearm and committed the murder for the benefit of the Lopers gang. These crimes were committed on January 21, 2005 and Andrade opined Gomez was a member of Lopers on that date.

Andrade also testified that on November 26, 2007 Francisco Roman Salgado pleaded guilty to active participation in a criminal street gang and voluntary manslaughter (Salgado manslaughter), and he admitted being vicariously armed with a firearm and committing the crimes for the benefit of the Lopers gang. These crimes were committed on July 17, 2006 and Andrade opined Gomez was a member of Lopers on that date.

Andrade opined Gonzalez was a member of the Lopers criminal street gang. According to Andrade, Gonzalez received a STEP[2] notice two weeks before the shooting, and he had received two other STEP notices in the preceding month. During each of the STEP notice contacts with police, Gonzalez admitted he was a Lopers gang member, and during one of these contacts, Gonzalez was in Lopers' claimed territory wearing the gang's colors. Andrade said there had been a total of five police contacts with Gonzalez between 2008 and 2010, and he was usually in the company of other Lopers gang members.

In Andrade's opinion, Gonzalez committed the instant crimes for the benefit of, at the direction of, or in association with the Lopers gang. In support of his opinion, Andrade explained the 7-Eleven was one frequented by Lopers members as well as members from other gangs. He believed the scuffle between Gonzalez and Martinez and his friends was a classic gang "hit up," with both sides announcing their gang allegiance. Andrade opined Gonzalez shot at the group because he felt disrespected during the hit up. He also believed Gonzalez's act of shooting rival gang members engendered the respect of his fellow gang members and members of rival gangs, served

---

[2] Street Terrorism Enforcement and Prevention Act. (§ 186.22 et seq.)

5

to intimidate members of the local community, and promoted other criminal conduct by the gang as a whole.

*4. Defense*

Gonzalez testified on his own behalf. He claimed he and four friends smoked marijuana for about three hours before they decided to go to the nearby 7-Eleven to buy "blunts" to use as marijuana cigarettes. Before leaving his apartment complex, Gonzalez grabbed a Lopers' gang gun from a nearby trash can because he was worried about getting "jumped." He hid the gun in some bushes near the 7-Eleven and parked his bicycle.

As Gonzalez opened the door to the store, four guys walked out. Gonzalez recognized two of the four from his neighborhood, and he heard one of them say, "Little Minnie." Gonzalez said, "I'm not from nowhere, but I hang around and kick it with Lopers gang." Gonzalez put his hand to his waistband, but he did not have a gun. Martinez and his friends walked away, and Gonzlaez went into the store. When he left the store, Gonzalez retrieved the gun, and rode his bicycle on McFadden on his way back to his apartment complex. As he rode home, Gonzalez saw Martinez and his friends walking down a driveway. Although he debated whether or not to use the gun, ultimately Gonzalez decided to fire in their general direction. He said he did not intend to hurt anyone, but fired the shots to scare them.

DISCUSSION

*1. Introduction*

Gonzalez challenges the sufficiency of the evidence to support the active participation conviction in count 5 and the gang enhancement findings as to counts 6, 7, 8, and 9, because the "pattern of criminal gang activity" (§ 186.22, subd. (e)) instruction

6

given to the jury did not include one of two predicate offenses relied upon by the prosecution. He also challenges the sufficiency of the evidence to support the active participation conviction because Gonzalez acted alone, not in association with any other gang member.

We find the evidence sufficient to support the active participation conviction and gang enhancement findings, notwithstanding the incomplete jury instruction. However, the evidence is insufficient to support the active participation conviction because Gonzalez acted alone. Therefore, we reverse as to count 5 only.

*2. Pattern of Criminal Gang Activity*

A pattern of criminal gang activity is an essential element of the definition of a criminal street gang for both the active participation substantive offense under section 186.22, subdivision (a), and the gang enhancements under section 186.22, subdivision (b)(1). (§ 186.22, subds. (a), (b)(1), (e), (f).) "As used in this chapter, 'pattern of criminal gang activity' means the commission of . . . or conviction of two or more of the following [33 specified] offenses, provided at least one of these offenses occurred after the effective date of this chapter [September 26, 1988] and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons." (§ 186.22, subd. (e).) The list of 33 specified offenses includes, "[u]nlawful homicide or manslaughter." (§ 186.22, subd. (e)(3).)

Here, the prosecutor introduced documents and testimony concerning the Gomez murder and the Salgado manslaughter to establish the requisite pattern of criminal gang activity. There is no question the Gomez murder is an "unlawful homicide" and the Salgado manslaughter is a "manslaughter," both within the meaning of section 186.22, subdivision (e)(3). Furthermore, these crimes were committed by different persons, on separate occasions, within three years of one another and after September 26, 1988.

7

Thus, there is sufficient evidence of the essential elements of a pattern of criminal gang activity.

Gonzalez seeks to avoid this inevitable conclusion by noting the list of predicate crimes set forth in the "pattern of criminal gang activity" instruction given to the jury included murder but omitted manslaughter.[3] Based upon this omission, Gonzalez argues the People cannot rely upon the Salgado manslaughter as a predicate crime and, as a result, there is insufficient evidence to establish a pattern of criminal gang activity.[4]

While at first blush this argument might seem plausible, a closer inspection reveals it is based upon a faulty premise. Gonzalez would have us measure the sufficiency of the evidence vis-à-vis the admittedly incomplete jury instruction definition rather than the complete statutory definition of a pattern of criminal gang activity. In essence Gonzalez seeks to use the incomplete jury instruction as a sword rather than a shield. He cites no authority for this novel approach and we have found none.

To the contrary, "In determining whether the evidence is sufficient to support a conviction or an enhancement, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.]

---

[3] The criminal street gang definition within the CALCRIM No. 1400 active participation instruction given states in part, "A pattern of criminal gang activity, as used here means: [¶] 1. The commission of any combination of two or more of the following crimes: murder, attempted murder or assault with a semiautomatic firearm . . . . " The CALCRIM No. 1401 gang enhancement instruction given simply states, "A criminal street gang is defined in another instruction to which you should refer."

[4] Gonzalez points out the current offenses cannot be used as predicates because they did not occur within three years of the Gomez murder. This point is irrelevant. The prosecutor did not rely upon the current offenses. Instead, the prosecutor specifically identified the Salgado murder and Gomez manslaughter as the predicate offenses.

This standard applies to a claim of insufficiency of the evidence to support a gang enhancement. [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

Applying these principles here, we must reject the sufficiency of the evidence challenge on this point. There is simply no question, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a pattern of criminal gang activity within the definition of a criminal street gang were proven beyond a reasonable doubt for purposes of supporting both the active participation substantive conviction under section 186.22, subdivision (a), and the gang enhancement findings under section 186.22, subdivision (b)(1).

We disagree with Gonzalez that *People v. Fiu* (2008) 165 Cal.App.4th 360 requires a different result. In *Fiu*, the trial court instructed the jury three specific prior offenses could be relied upon to establish a pattern of criminal gang activity. The appellate court found two of these offenses, possession of an assault weapon (§ 12280, subd. (b)), could not be relied upon because it is not one of the 33 qualifying crimes specified in section 186.22, subdivision (e). (*People v. Fiu*, *supra*, 165 Cal.App.4th at p. 387.)

The *Fiu* court also noted in passing the charged offenses might be considered as predicates "but the trial court did not so instruct the jury." (*People v. Fiu, supra,* 165 Cal.App.4th at p. 387, fn. 33.) This footnote in *Fiu* hardly stands for the proposition offered by Gonzalez. (*People v. Castellanos* (1999) 21Cal.4th 785, 799, fn. 9 ["'an opinion is not authority for a proposition not therein considered'"].) In context, we interpret *Fiu* as saying the statute trumps improper jury instructions for purposes of evaluating predicate crimes.

Finally, while Gonzalez steadfastly denies making any instructional error argument and even contends there was no instructional error, the Attorney General argues the trial court "failed to correctly instruct the jury on [the pattern of criminal activity]

element" but there was no prejudice as a result.[5]  We agree with the Attorney General. There was instructional error but there was no prejudice.

To evaluate prejudice, we must assess whether the erroneous instruction is harmless beyond a reasonable doubt.  (*People v. Flood* (1998) 18 Cal.4th 470, 489-490, 504; *Chapman v. California* (1966) 386 U.S. 18.)  "The test is not whether a hypothetical jury . . . would render the same verdict in the absence of the error, but whether there is any reasonable possibility that the error might have contributed to the conviction in this case." (*People v. Lewis* (2006) 139 Cal.App.4th 874, 887.)

In this case if the jury had followed the erroneous instruction, it could not have found Gomez guilty of active participation or found the gang enhancements true, because the Gomez murder as a single predicate is insufficient to establish the requisite pattern of criminal gang activity.  Two predicates are needed.  But obviously the jury did not follow the erroneous instruction.  Thus, the erroneous instruction, which should have resulted in a different verdict, did not in fact contribute to the actual verdict at all.  Under these circumstances, the erroneous instruction was harmless beyond a reasonable doubt.

In sum, whether analyzed as a sufficiency of the evidence question, or as an instructional error, the result is the same.  The omission of manslaughter from the list predicate crimes specified in the pattern of criminal gang activity instruction given to the jury does not warrant reversal of either the active participation conviction in count 5 or the gang enhancement findings as to counts 6, 7, 8, and 9.

---

[5]  The Attorney General also argues Gonzalez forfeited any instructional error claim by including it within his sufficiency of the evidence claim in violation of California Rules of Court, rule 8.204(a)(1)(B).  We elect to disregard this noncompliance, if any, as permitted under California Rules of Court, rule 8.204(e)(2)(C).

10

*3. Active Participation*

Gonzalez next argues there is insufficient evidence to support his active participation conviction in count 5 because he acted alone. The California Supreme Court recently agreed with this position. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1139.) Here, it is undisputed Gonzalez acted alone when he fired at Martinez and his friends, hitting Martinez in the back with one of the bullets. We are compelled to follow *Rodriguez* (*Auto Equity Sales Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455) and therefore reverse Gonzalez's conviction for active participation.

DISPOSITION

The active participation conviction in count 5 is reversed and the sentence is stricken. This disposition does not change the total prison time imposed because sentencing on count 5 was stayed under section 654. The clerk of the superior court is directed to amend the abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.

THOMPSON, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

11