Filed 2/6/17

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESSE EUGENE FRUTOZ,<br><br>    Defendant and Appellant. | F069140<br><br>(Super. Ct. Nos. F12910379 &<br>F13906690)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Houry A. Sanderson, Judge.

Elisa A. Brandes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

"Under the 'Three Strikes' law as originally enacted in 1994, an individual convicted of any felony offense following two prior convictions for serious or violent felonies was subject to an indeterminate term of life imprisonment with a minimum term of no less than 25 years. [Citations.] In 2012, the electorate passed the Three Strikes Reform Act of 2012 (Reform Act or Act) (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)), which amended the law to reduce the punishment prescribed for certain third strike defendants." (*People v. Conley* (2016) 63 Cal.4th 646, 651.) "The Reform Act changed the sentence prescribed for a third strike defendant whose current offense is not a serious or violent felony. [Citation.] Under the Reform Act's revised penalty provisions, many third strike defendants are excepted from the provision imposing an indeterminate life sentence (see Pen. Code, § 1170.12, subd. (c)(2)(A)) and are instead sentenced in the same way as second strike defendants (see *id.*, subd. (c)(2)(C)): that is, they receive a term equal to 'twice the term otherwise provided as punishment for the current felony conviction' (*id.*, subd. (c)(1)). A defendant does not qualify for this ameliorative change, however, if his current offense is . . . one in which he used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury (*id.*, subd. (c)(2)(C)(iii))." (*Id.* at pp. 652-653.) "The Act provides that these disqualifying factors must be pleaded and proved by the prosecution. (Pen. Code, § 1170.12, subd. (c)(2)(C).)" (*Id.* at p. 653.)

Here, Jesse Eugene Frutoz (defendant) had two or more prior serious and/or violent felony convictions that were pled and proved, and his current offense was neither a serious nor a violent felony. If that were the end of the story, defendant's sentence would be "twice the term otherwise provided as punishment for the current felony conviction." (Pen. Code,[1] § 1170.12, subd. (c)(1).) In this case, however, the prosecution pled and proved that during the commission of the current offense defendant

---

[1]    All further statutory references are to the Penal Code.

was armed with a firearm.[2]  As a result, defendant was sentenced to an indeterminate term of life imprisonment.  Defendant asserts error.  He argues that he was charged with possession of a firearm by a felon, a violation of section 29800, subdivision (a)(1) and, as to that charge, the prosecutor may not plead and prove an allegation under section 1170.12, subdivision (c)(2)(C)(iii).[3]  He is incorrect.  The People appropriately pled and proved the clause (iii) factor as to the charge of felon in possession of a firearm.

## FACTS AND PROCEDURAL HISTORY

### *Fresno County Superior Court case No. F12910379*

On December 20, 2012, defendant, then an inmate at the Fresno County Annex Jail, was found to have marijuana hidden in a sock.  He subsequently pled no contest to possession of marijuana in a jail facility.  (§ 4573.6.)  As part of his plea agreement, he admitted having suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and having served four prior prison terms (§ 667.5, subd. (b)).

### *Fresno County Superior Court case No. F13906690*

Sherrie Phillips had previously let defendant stay in the tent she shared with her partner in a homeless camp, but eventually she told him he was no longer welcome.  They had an argument that got out of hand and defendant told Phillips not to let him catch her alone, but Phillips did not take the threat seriously.

---

**2**     Defendant's jury made the arming finding under both section 667, subdivision (e)(2)(C)(iii) and section 1170.12, subdivision (c)(2)(C)(iii).  Although each contains the same language, defendant refers only to the latter provision.  For convenience, we do the same, although our analysis and conclusion apply equally to both.  For brevity, we sometimes refer to the statutory provisions collectively as "clause (iii)."

**3**     Defendant refers to clause (iii) as an "enhancement."  It is not.  As our quotation of the California Supreme Court's description in *People v. Conley* makes clear, clause (iii) is part of the three strikes law as modified by the Reform Act.  It has long been settled that the three strikes law "articulates an alternative sentencing scheme for the current offense rather than an enhancement.  [Citations.]"  (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 527; see, e.g., *People v. Nobleton* (1995) 38 Cal.App.4th 76, 81.)

3.

On July 7, 2013, Phillips was "dumpster diving" in Fresno when she saw defendant on his bicycle. Phillips talked with defendant in the alley for 10 to 15 minutes, then said she had to go. She turned to pick up something from the ground and, when she stood back up, she felt a "bump." Defendant was looking at her with a strange expression. In his hand was a small buck knife. Phillips realized she had been cut just above the elbow. She subsequently went to the hospital, where her wound was closed with staples.

Early on the morning of July 15, 2013, Fresno Police Officers Soto and Douangmala were on patrol when they saw defendant riding a bicycle without a headlight. Told to stop, defendant directed the officers' attention elsewhere and rode off. When the officers caught up to him, defendant threw down his bicycle and a nine-millimeter handgun that came from his front waistband area. He ran. Defendant eventually was located and taken into custody. The gun contained a fully inserted, but unloaded, magazine.

A jury subsequently convicted defendant of assault with a deadly weapon (§ 245, subd. (a)(1); count 1), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2), and misdemeanor resisting or obstructing a peace officer (§ 148, subd. (a)(1); count 3). As to count 2, the jury additionally found defendant was personally armed with a firearm during commission of the offense. (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) Defendant admitted having suffered two prior serious felony convictions that were also strikes (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d)) and having served five prior prison terms (§ 667.5, subd. (b)). The court declined defendant's "invitation" to dismiss his prior strike convictions, and sentenced him to consecutive terms of 25 years to life in prison on counts 1 and 2, plus a total of 13 years pursuant to sections 667, subdivision (a)(1) and 667.5, subdivision (b). The court imposed an additional consecutive term of two years in case No. F12910379.

## DISCUSSION[4]

Defendant contends the finding with respect to count 2, that he was armed with a firearm pursuant to section 1170.12, subdivision (c)(2)(C)(iii), must be stricken as an illegal sentence, because it is inapplicable to a conviction under section 29800, subdivision (a)(1). Defendant acknowledges a number of courts have rejected this or similar arguments in the context of eligibility for resentencing under section 1170.126 (e.g., *People v. Hicks* (2014) 231 Cal.App.4th 275, 279-280, 283-284; *People v. Brimmer* (2014) 230 Cal.App.4th 782, 790, 797-799; *People v. Elder* (2014) 227 Cal.App.4th 1308, 1311, 1313-1314; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1048, 1051-1052; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1026-1027, 1029-1032 (*Osuna*); *People v. White* (2014) 223 Cal.App.4th 512, 519, 526), but contends these cases either do not apply to an initial sentencing decision or are wrongly decided.[5]

---

[4]    Our discussion involves only case No. F13906690, as defendant raises no issues concerning case No. F12910379.

[5]    The Reform Act "also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.) Although section 1170.126, subdivision (e)(2) renders ineligible for resentencing any inmate whose current sentence was imposed for any of the "offenses" appearing in clause (iii), it does not contain the same pleading and proof requirements that exist where an initial sentencing for a current offense is at issue. (*Osuna, supra*, 225 Cal.App.4th at p. 1033; accord, *People v. White, supra*, 223 Cal.App.4th at p. 527; *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1303, fn. 26 (*Kaulick*).) Since an initial sentencing for a current offense was at issue in the present case, the clause (iii) factor was appropriately plead in the charging document and submitted to the jury for its determination, upon instructions the People had the burden of proving the allegation beyond a reasonable doubt. (See generally *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490; cf. *People v. Blakely, supra*, 225 Cal.App.4th at pp. 1060-1063.)

5.

In *Osuna*, *supra*, 225 Cal.App.4th 1020, we rejected the various arguments defendant now makes as to why the arming provision of clause (iii) should be held inapplicable to the crime of being a felon in possession of a firearm.

Citing *People v. Bland* (1995) 10 Cal.4th 991, 997 (*Bland*), we observed that " '[a]rmed with a firearm' has been statutorily defined and judicially construed to mean having a firearm available for use, either offensively or defensively," and we determined the electorate intended the phrase to have that meaning in clause (iii) (*Osuna*, *supra*, 225 Cal.App.4th at p. 1029). We stated:

> "Defendant's current conviction was for violating [former] section 12021, subdivision (a)(1) [now section 29800, subdivision (a)(1)], which makes it a felony for a person previously convicted of a felony to own, purchase, receive, or have in his or her possession or under his or her custody or control, any firearm. The elements of this offense are conviction of a felony and ownership or knowing possession, custody, or control of a firearm. [Citations.] 'A defendant possesses a weapon when it is under his dominion and control. [Citation.] A defendant has actual possession when the weapon is in his immediate possession or control. . . . [Citations.]' [Citation.] 'Implicitly, the crime is committed the instant the felon in any way has a firearm within his control.' [Citation.]

> "A firearm can be under a person's dominion and control without it being available for use. For example, suppose a parolee's residence (in which only he lives) is searched and a firearm is found next to his bed. The parolee is in possession of the firearm, because it is under his dominion and control. If he is not home at the time, however, he is not armed with the firearm, because it is not readily available to him for offensive or defensive use. Accordingly, possessing a firearm does not necessarily constitute being armed with a firearm." (*Osuna*, *supra*, 225 Cal.App.4th at pp. 1029-1030, fn. omitted.)

Based on the jury instructions given in this case, we know defendant's jury found, beyond a reasonable doubt, defendant carried the gun and had it available for offensive or defensive use. Thus, factually defendant was "armed with a firearm" within the meaning of clause (iii).

Defendant does not expressly dispute this. Rather, he points to *Bland*'s interpretation of section 12022 as support for the proposition the arming must take place during the underlying crime and have some facilitative nexus to that offense, a situation that does not exist where mere unlawful possession of a firearm is concerned.

We again answered this claim in *Osuna*. We explained:

"[Defendant] concludes one cannot be armed with a firearm during the commission of possession of the same firearm.

"Defendant would be correct if we were concerned with imposition of an arming *enhancement* — an additional term of imprisonment added to the base term, for which a defendant cannot be punished until and unless convicted of a related substantive offense. [Citations.]. . . [¶] . . . [¶]

"As *Bland* makes clear, for a defendant to be 'armed' for purposes of section 12022's additional penalties, he or she must have a firearm 'available for use *to further the commission of the underlying felony*.' (*Bland*, *supra*, 10 Cal.4th at p. 999, italics added.) '[W]hen the underlying felony is a continuing offense, it is sufficient if the defendant has a gun available at any time during the felony *to aid in its commission*. [Citation.]' [Citation.]

"Having a gun available does not further or aid in the commission of the crime of possession of a firearm by a felon. Thus, a defendant convicted of violating section [29800, subdivision (a)(1)] does not, regardless of the facts of the offense, risk imposition of additional punishment pursuant to section 12022, because there is no 'facilitative nexus' between the arming and the possession. However, unlike section 12022, which requires that a defendant be armed '*in* the commission of' a felony for additional punishment to be imposed (italics added), the Act disqualifies an inmate from eligibility for lesser punishment if he or she was armed with a firearm '*during* the commission of' the current offense (italics added). 'During' is variously defined as 'throughout the continuance or course of' or 'at some point in the course of.' [Citation.] In other words, it requires a temporal nexus between the arming and the underlying felony, not a facilitative one. The two are not the same. (*Bland*, *supra*, 10 Cal.4th at p. 1002 [' "in the commission" of' requires both that ' "arming" ' occur during underlying crime *and* that it have facilitative nexus to offense].)

7.

"*In re Pritchett* (1994) 26 Cal.App.4th 1754 illustrates the difference. Pritchett struck his former girlfriend on the head with the barrel of a sawed-off shotgun. He was convicted of possessing the gun under former section 12020, subdivision (a), and his sentence was enhanced, pursuant to section 12022.5, subdivision (a), for use of the firearm in commission of that offense. [Citation.] On appeal, the People argued the enhancement was valid, because Pritchett used the shotgun to strike the victim in the commission of possessing the gun. [Citation.] The Court of Appeal disagreed, explaining: 'Although Pritchett used the shotgun as a club *during* his possession of it, he did not use it "in the commission" of his crime of possession. Possession was complete without use of the shotgun. In addition to possessing it, he did use it, but using it as a club in no way furthered the crime of possession.' [Citation.]

"Following this reasoning, defendant was armed with a firearm *during* his possession of the gun, but not 'in the commission' of his crime of possession. There was no facilitative nexus; his having the firearm available for use did not further his illegal possession of it. There was, however, a temporal nexus. Since the Act uses the phrase '[d]uring the commission of the current offense,' and not in the commission of the current offense (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)), and since at issue is not the imposition of additional punishment but rather eligibility for reduced punishment, we conclude the literal language of the Act disqualifies an inmate from resentencing if he or she was armed with a firearm during the unlawful possession of that firearm." (*Osuna*, *supra*, 225 Cal.App.4th at pp. 1030-1032.)

*Osuna* dealt with eligibility for resentencing under section 1170.126, not imposition of an initial sentence under the three strikes law as modified by the Reform Act. Nevertheless, we find it applicable, despite its references to imposition of additional punishment not being at issue. Even where the initial sentence is concerned, clause (iii) does not result in the imposition of additional punishment in the sense an enhancement such as section 12022 does. Rather, the pleading and proof of one of the circumstances enumerated in clause (iii) abolishes the Reform Act's presumption a second-strike sentence will be imposed (see *Kaulick*, *supra*, 215 Cal.App.4th at p. 1303, fn. 26), and instead results in imposition of an indeterminate life sentence under the three strikes law's alternative sentencing scheme. Moreover, section 1170.126, subdivision (e)(2)

8.

expressly refers to clause (iii) "offenses" as disqualifying an inmate from resentencing under the Reform Act. Since that Act both added clause (iii) to the three strikes law and enacted section 1170.126 (see initiative measure Prop. 36, §§ 2, 4, 6, approved by voters Nov. 6, 2012, eff. Nov. 7, 2012), we know of no reason to breach established rules of statutory construction and interpret clause (iii) — or voters' intent with respect thereto — differently, depending on whether imposition of an initial sentence or eligibility for resentencing is concerned (see *People v. Caudillo* (1978) 21 Cal.3d 562, 585, overruled on another ground in *People v. Martinez* (1999) 20 Cal.4th 225, 229, 237, fn. 6 & disapproved on another ground in *People v. Escobar* (1992) 3 Cal.4th 740, 749-751 & fn. 5).

Defendant contends cases such as *Osuna* are wrongly decided, and erroneously distinguish "during" from "in the commission of." We are not persuaded. Defendant also suggests eligibility for resentencing is distinguishable from the imposition of an initial sentence — making such cases of little value here — because trial courts have "considerably more discretion" in determining whether a defendant is eligible for resentencing than in their initial sentencing decisions. To the contrary, it is only after a trial court determines an inmate's eligibility for resentencing that the court exercises discretion in determining whether resentencing that individual would pose an unreasonable risk of danger to public safety. (§ 1170.126, subds. (e) & (f); *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1336-1337.)

Defendant argues possession of a firearm by a felon is not inherently dangerous. As the Court of Appeal explained in *People v. Elder*, *supra*, 227 Cal.App.4th at page 1314: "While, as defendant asserts, possession of a gun of itself is not criminal, a *felon's* possession of a gun is not a crime that is merely *malum prohibitum*. As we stated nearly 20 years ago, 'public policy generally abhors even momentary possession of guns by convicted felons who, the Legislature has found, are more likely to misuse them.' [Citation.]" Thus, just as voters intended the arming provision of clause (iii) to disqualify

from resentencing, pursuant to section 1170.126, subdivision (e)(2), a defendant who was convicted of violating section 29800, subdivision (a)(1) when he or she also had the firearm he or she was convicted of possessing available for offensive or defensive use (*Osuna*, *supra*, 225 Cal.App.4th at p. 1035), so too they intended that provision to subject a third strike offender to an indeterminate life term, pursuant to sections 667, subdivision (e)(2) and 1170.12, subdivision (c)(2), under the same circumstances.[6]

## DISPOSITION

The judgments are affirmed.


_____

DETJEN, J.

WE CONCUR:


_____

HILL, P.J.


_____

LEVY, J.

---

**6**     Defendant's reliance on the rule of lenity is unavailing.  Contrary to defendant's apparent belief, that rule — which generally requires giving a criminal defendant the benefit of every *reasonable* doubt on questions of statutory interpretation — does not apply merely because there may be some ambiguity in statutory language.  (*People v. Blakely*, *supra*, 225 Cal.App.4th at pp. 1054-1055.)  Rather, " 'the rule applies " 'only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule.' " [Citation.]' [Citation.]  No such uncertainty exists here." (*People v. Nuckles* (2013) 56 Cal.4th 601, 611.)