Filed 9/20/19 Opinion on rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DYLAN JAMES BAY, Defendant and Appellant. | A154498 (Napa County Super. Ct. No. CR184636) |

A jury convicted Dylan Bay of felony counts of being a felon in possession of a firearm and ammunition and misdemeanor counts of possessing burglary tools and giving false information to a peace officer. Bay admitted two prior-prison-term allegations were true, and the trial court sentenced him to three years and eight months in prison.

On appeal, Bay claims that insufficient evidence supports the three possession convictions. We disagree, because substantial evidence supports a finding that the contraband was in his constructive possession. In concluding that substantial evidence supports Bay's conviction for possession of burglary tools, we interpret Penal Code[1] section 466 to correct a drafting error. Although the text of section 466 prohibits a person from "having upon him or her in his or her possession" the specified tools, the statute's legislative history compels the conclusion that an "or" was inadvertently omitted after the first "her" in the quoted phrase. Under the authority of *People v. Skinner* (1985) 39 Cal.3d 765 (*Skinner*), we therefore interpret section 466 to prohibit a person from having burglary tools "upon him or her *or* in his or her possession."

---

[1] All further statutory references are to the Penal Code.

We nevertheless reverse Bay's conviction for possession of burglary tools, because the special jury instruction on that offense prejudicially omitted the element of felonious intent. We also agree with the parties that the trial court erred by staying instead of striking one of the prior-prison-term enhancements. We otherwise affirm.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

At around 2:00 a.m. on September 9, 2017, a Napa County Sheriff's deputy was on patrol when he noticed a Cadillac SUV parked illegally near a popular overlook. The deputy approached and saw three people in the vehicle, including Bay, who was sitting in the driver's seat. When asked what they were doing, Bay said "they were just sitting there looking at the view and asked . . . if they were doing something wrong." The deputy indicated a no-parking sign and asked Bay for identification. Bay, whom the deputy knew from prior contacts, stated that he did not have identification and provided a false name. Knowing that Bay was on postrelease community supervision (PRCS) and subject to search terms, the deputy asked him to get out of the vehicle.

After Bay complied, the deputy asked him "[i]f he had any guns, knives, drugs[,] or any other weapons on him or in the vehicle," and Bay said, "Not that I know of." The deputy then conducted a pat search of Bay's person and felt a wallet in his back pocket. Bay admitted that the wallet contained identification in his real name. The deputy asked why he had provided a false name, and Bay said that "[h]e was worried that he might have a warrant." Before searching the SUV, the deputy asked Bay again whether there was any contraband in the vehicle. This time, Bay admitted "there was an amount of marijuana in the small pouch of the Jansport backpack inside the vehicle."

While Bay was detained in the deputy's patrol vehicle, the deputy spoke to the other two people in the SUV, a woman in the front passenger's seat named N.F. and a man in the backseat named R.Z. The vehicle, which belonged to N.F., was "[e]xtremely messy." The deputy described the interior as having "a lot of items packed in very tightly," and the man "in the back appeared to have been packed in there with the items."

2

The backpack Bay had mentioned was "directly behind the center console," almost sitting on top of it, and the deputy testified that it would have been accessible by all three people in the car. Upon searching the backpack, the deputy found marijuana, as well as a notebook, in its front compartment. The back compartment contained a loaded .380 caliber pistol in a gun case, boxes of ammunition, a lock pick set, a bong, and a hypodermic needle. In addition, a butterfly knife was in the console of the driver's door.[2]

The registered owner of the pistol was later determined to be S.Z., the recently deceased boyfriend of N.F. and brother of R.Z. A piece of paper with S.Z.'s name on it was inside the gun case. The deputy formed the impression that there was "some sort of relationship" between Bay and N.F., but he was unaware of any direct relationship between Bay and S.Z.

An evidence technician testified that she performed a fingerprint analysis on the pistol, an ammunition box, the lock pick set, and the butterfly knife, which were the only items collected as evidence. There were no usable fingerprints on any of them. In addition, although the technician swabbed the items for possible DNA, those samples were never tested.

Bay was charged with two felonies, being a felon in possession of a firearm and being a felon in possession of ammunition, and three misdemeanors, providing false information to a peace officer, possessing burglary tools, and carrying a switchblade knife. It was also alleged that he had served two prior prison terms for two 2016 felony convictions.[3] Before trial, Bay stipulated that he was a felon and admitted the prior-prison-term allegations.

---

[2] A disassembled rifle in a gun case was found where R.Z. had been sitting and some knives were "packed away" in the back of the SUV, but Bay was not charged with possessing these items.

[3] The charges were brought under sections 29800, subdivision (a)(1) (felon in possession of firearm), 30305, subdivision (a) (felon in possession of ammunition), 148.9, subdivision (a) (providing false information), 466 (possessing burglary tools), and 21510 (carrying switchblade). The enhancement allegations were made under section 667.5.

A jury acquitted Bay of carrying a switchblade knife and convicted him of the four other counts. The trial court denied probation and sentenced him to a total of three years and eight months in prison, composed of a term of two years for the firearm possession and consecutive terms of eight months for the ammunition possession and one year for one of the prior-prison-term enhancements. He was also sentenced to two concurrent terms of six months in jail for providing false information and possessing burglary tools, and a one-year term for the other prior-prison-term enhancement was imposed and stayed.

II.
DISCUSSION

A.      *Substantial Evidence Supports the Three Possession Convictions.*

Bay claims that his convictions for possession of a firearm, ammunition, and burglary tools must be reversed because there was insufficient evidence that he knew the backpack contained these items. We agree with the Attorney General that substantial evidence supports the conclusion that Bay constructively possessed the backpack and its contents, and we therefore affirm these convictions.

1.      Standard of review.

In analyzing claims such as Bay's, " ' " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence— that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" [Citation.] In conducting such a review, we " 'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" [Citations.] "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' " (*People v. Harris* (2013) 57 Cal.4th 804, 849.)

This standard of review also applies " 'in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] " 'Although it is the duty of the jury to

4

acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " ' " (*People v. Harris*, *supra*, 57 Cal.4th at pp. 849–850.)

> 2.  Substantial evidence supports the convictions for possession of the pistol and the ammunition because the jury could reasonably infer that Bay had constructive possession of the backpack.

The firearm- and ammunition-possession offenses prohibit a felon from "possess[ing]" or having "under custody or control" the given item (§§ 29800, subd. (a)(1), 30305, subd. (a)(1)), and they are general-intent crimes that require knowing possession of the prohibited item. (*People v. Frutoz* (2017) 8 Cal.App.5th 171, 176; *People v. Jeffers* (1996) 41 Cal.App.4th 917, 922; see CALCRIM Nos. 2511, 2591.) Possession may be actual or constructive. " 'A defendant has actual possession when the weapon is in his [or her] immediate possession or control,' " i.e., when he or she is actually holding or touching it. (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052; see *People v. Montero* (2007) 155 Cal.App.4th 1170, 1179; CALCRIM Nos. 2511, 2591.) "To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person." (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417, disapproved on another ground in *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6.) Although a defendant may share possession with other people, "mere proximity" or opportunity to access the contraband, "standing alone, is not sufficient evidence of possession." (*Sifuentes*, at p. 1417; *People v. Zyduck* (1969) 270 Cal.App.2d 334, 336.)

We agree with the Attorney General that the evidence of Bay's knowledge of the items in the backpack was, to say the least, "not overwhelming." But applying our limited standard of review, we conclude there was sufficient evidence from which the

jury could infer that Bay knowingly possessed the pistol and ammunition. Contrary to Bay's position, there *was* evidence "to support the inference that the backpack belonged to [him]." (Italics and boldface omitted.) Namely, he knew there was marijuana inside the backpack's front pocket, which supports the conclusion that he exercised dominion and control over the backpack. To be sure, it is possible that the backpack was not Bay's, especially given the evidence tying the pistol to S.Z., and that Bay knew of the marijuana's presence for some reason other than that he put it there or had assumed knowing control of the backpack and its contents. But the jury could have reasonably inferred Bay's ownership or control of the backpack, a type of personal container not normally shared among multiple people, based on his knowledge of the marijuana's particular location. (See *People v. Baker* (2008) 164 Cal.App.4th 1152, 1159–1160 [a purse is "an inherently private repository for personal items" that "is not generally an object for which two or more persons share common use or authority"].)

Bay argues that it is also unreasonable to infer that he was aware of the items in the backpack's back pocket based on his knowledge of the marijuana in the front pocket. He provides no authority for distinguishing between the compartments of the backpack in this manner, and we decline to do so. His knowledge of the marijuana's presence supported the inference that he exercised control over the backpack, which in turn supported an inference that he exercised control over the *entire* backpack.

Finally, we note that in "cases where the sufficiency of the evidence might otherwise have been doubtful," courts have found the evidence "strengthened by a showing of consciousness of guilt." (*People v. Redrick* (1961) 55 Cal.2d 282, 287–288.) Bay claims that the fact he gave a fake name when initially contacted, which he explained he did because he thought he had a warrant, "did not support the inference that he knew what was inside the backpack's main compartment" and "had nothing to do with the backpack, especially since [it] and its contents did not contain his name or any indicia in it." The jury was not required to credit Bay's explanation for the misrepresentation, however, and could have reasonably inferred that he provided a fake name because he knew he was subject to warrantless searches and did not want the contraband in the

6

backpack to be discovered. Given the totality of the circumstances, substantial evidence supports the convictions for possession of a firearm and ammunition.

> 3. The conviction for possession of burglary tools is also supported by substantial evidence.

Our review of the conviction for possession of burglary tools requires a separate analysis because the wording of section 466 differs from the wording of the firearm- and ammunition-possession statutes. As we have said, the latter two statutes prohibit a felon from "possess[ing]" or having "under custody or control" the given item. (§§ 29800, subd. (a)(1), 30305, subd. (a)(1).) In contrast, section 466 prohibits a person from having burglary tools "*upon him or her* in his or her possession." (§ 466, italics added.) We conclude that even though section 466's text appears to require a defendant to have the tools upon his or her person to be convicted, the statute contains a drafting error and should be interpreted to prohibit constructive possession of burglary tools as well.

" ' " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language." ' " (*Heckart v. A-1 Self Storage, Inc.* (2018) 4 Cal.5th 749, 757.) Hence, it is a "basic principle of statutory and constitutional construction . . . that courts, in construing a measure, [do] not undertake to rewrite its unambiguous language. [Citation.] That rule is not applied, however, when it appears clear that a word has been erroneously used, and a judicial correction will best carry out the intent of the adopting body." (*Skinner*, *supra*, 39 Cal.3d at p. 775.) Whether a statute's wording "is, in fact, a drafting error can only be determined by reference to the purpose of the section and the intent of the [Legislature] in adopting it." (*Id.* at pp. 775–776.)

In their original briefing, the parties assumed that section 466 prohibits constructive possession of burglary tools. We requested and received supplemental

7

briefing on whether this assumption was sound. Neither party addressed in that briefing section 466's legislative history. In a July 10, 2019 opinion, we reversed Bay's conviction based on the text of section 466, holding that insufficient evidence was presented to establish that the lock pick set was "upon [him] in his . . . possession." Analogizing the statutory phrase "upon him or her" to the phrase "upon the person" or "on the person" used in other possession-related statutes, and relying upon *People v. Wade* (2016) 63 Cal.4th 137, we concluded that because Bay was never seen even touching the backpack, much less wearing it, it was not "upon [him] in his . . . possession" as required by the text of section 466.

The Attorney General filed a petition for rehearing. For the first time, he claimed that the legislative history of section 466 reveals that the phrase "upon him or her in his or her possession" was the result of a drafting error, by which the Legislature inadvertently omitted the word "or" after the first "her" in the phrase. We granted the rehearing petition, vacated our opinion, and gave the parties the opportunity to submit additional briefing on what significance, if any, section 466's legislative history has to the resolution of this case. The Attorney General submitted briefing, and Bay did not.

After reviewing the relevant legislative history, we agree with the Attorney General's belated argument that the omission of "or" after the first "her" is the result of a legislative drafting error. Before 1984, section 466 was not gender inclusive and prohibited a person from "having upon him *or* in his possession" the specified tools. (Former § 466, italics added.) In 1984, the Legislature passed Assembly Bill No. 1895 (1983–1984 Reg. Sess.) (Assem. Bill. No. 1895), which amended section 466.[4] The bill's purpose was "to deal with what is perceived to be a substantial problem related to burglary prevention" by, among other things, expanding the list of prohibited tools. (Assem. Criminal Law & Public Safety Com., Rep. on Assem. Bill No. 1895, as amended Jan. 9, 1984, p. 1.) To that end, the bill added several specific tools to the list of items

---

[4] We granted the Attorney General's request for judicial notice of the legislative history of Assem. Bill No. 1895.

prohibited when possessed with intent to feloniously break or enter. (Stats. 1984, ch. 82, § 1.)

As originally introduced, Assem. Bill No. 1895 divided the list of prohibited tools into two categories by splitting section 466 into two subdivisions. (Assem. Bill No. 1895, § 1, as introduced Mar. 4, 1983.) Under subdivision (a) of this version of the bill, the possession of certain tools by any "unauthorized person," which was defined by reference to whether the person needed to use the tool in the course of a lawful occupation, would be a misdemeanor regardless of the person's intent. (*Ibid.*) Under subdivision (b) of this version, the possession of the remaining universe of tools would be a misdemeanor if the person had an intent to feloniously break or enter. (*Ibid.*)

In creating subdivision (a), this original version of the bill altered then-existing section 466 to be gender inclusive and to make "[e]very *unauthorized* person having upon him *or her* or in his *or her* possession" the specified tools guilty of a misdemeanor. (Assem. Bill No. 1895, § 1, as introduced Mar. 4, 1983.) Thus, in adding the gender-inclusive language, this version of the bill maintained the "or" between the concepts of having the tools upon oneself and having the tools in one's possession. But in creating subdivision (b), this version added language to make "[e]very person having upon him or her in his or her possession" the specified tools guilty of a misdemeanor. (*Ibid.*, italics omitted.) In other words, although subdivision (b) mirrored the gender inclusivity of subdivision (a), it dropped the "or" between the concepts of having the tools upon oneself and having the tools in one's possession. Ultimately, the idea to criminalize the possession of certain tools without an intent requirement was abandoned, subdivision (a) was deleted, and subdivision (b) survived as the text of section 466—including the phrase missing the "or" after the first "her." (See Assem. Bill No. 1895, § 1, as amended Jan. 17, 1984; Stats. 1984, ch. 82, § 1.)

Nothing in the legislative history suggests the missing "or" was intentionally omitted. To begin with, the "or" was retained in subdivision (a) of the original version of the bill, and there was no apparent reason to criminalize the constructive possession of some burglary tools but not others. More broadly, nothing indicates that the Legislature

9

intended to amend section 466 to eliminate constructive possession as a basis for liability so as to restrict the statute's reach. Rather, the legislative history is replete with references to expanding liability under the section by increasing the number of prohibited tools. (E.g., Legis. Analyst, analysis of Assem. Bill No. 1895, as amended Mar. 14, 1984, p. 1; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1895, as amended Jan. 17, 1984, pp. 1–2; Assem. Com. Criminal Law & Public Safety, Rep. on Assem. Bill No. 1895, as amended Jan. 9, 1984, p. 1.)

We must therefore conclude that the Legislature inadvertently omitted the word "or" from section 466 and that "a judicial correction will best carry out the intent of the adopting body." (*Skinner*, *supra*, 39 Cal.3d at p. 775.) Thus, we construe the statute to prohibit a person from "having upon him or her *or* in his or her possession" the specified tools. (See *ibid.*) Under this interpretation, section 466 prohibits the constructive possession of burglary tools, and therefore substantial evidence supports Bay's conviction under it. The Legislature may wish to amend the statute to eliminate the confusion that could arise by relying on the statute's existing text.

### B. *The Jury Instruction on Possession of Burglary Tools Prejudicially Omitted the Element of Felonious Intent.*

Bay claims that his conviction for possession of burglary tools must be reversed because the special jury instruction on that offense omitted the requirement of possessing the tools with an intent to break and enter *to commit a felony*.[5] We agree.

To establish a defendant's guilt under section 466, the People must prove "(1) possession by the defendant; (2) of tools within the purview of the statute; (3) with the intent to use the tools for the felonious purposes of breaking or entering." (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1084–1085.) Our state Supreme Court recently clarified that the required intent is "to use an 'instrument or tool' to break or otherwise effectuate physical entry into a structure in order to commit theft or some other felony within the structure." (*In re H.W.* (2019) 6 Cal.5th 1068, 1076.)

---

[5] We did not reach this issue in our previous opinion because we reversed the section 466 conviction for insufficient evidence.

There is no standard jury instruction on possession of burglary tools, so the prosecutor here prepared a special instruction.  When asked whether he had "[a]ny problem" with the proposed instruction, Bay's trial counsel said he did not.  The trial court then instructed the jury that to convict Bay under section 466, it had to conclude that (1) he possessed a specified tool and (2) when he possessed that tool, "he intended to use [it] to break into or enter into any building, railroad car, aircraft, or vessel, trailer coach, or vehicle."

Bay contends the instruction incorrectly stated the law and violated due process by omitting an element of the crime.  The Attorney General first argues that Bay forfeited this claim because he did not object to the special instruction below.  But the Attorney General concedes that "the intent to use the [burglary] tool for a felonious purpose is an element of the offense" and that the special instruction erroneously omitted that element.  A "trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense" (*People v. Merritt* (2017) 2 Cal.5th 819, 824), and such claims are preserved even absent an objection.  (See § 1259; *People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7.)

The Attorney General next argues that the error was harmless.  " '[A]n instructional error that improperly . . . omits an element of an offense . . . generally is not a structural defect in the trial mechanism that defies harmless error review and automatically requires reversal under the federal Constitution.' " (*People v. Gonzalez* (2012) 54 Cal.4th 643, 662–663.)  Rather, such instructional errors are reviewed for harmlessness under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).  (*Gonzalez*, at p. 663.)

The Attorney General contends that the error was harmless under *Chapman* for two reasons.  First, claiming that "[a]n argument by the prosecutor that draws the jury's attention to the missing element" can establish harmlessness beyond a reasonable doubt, the Attorney General highlights the prosecutor's arguments that Bay "possessed the lock pick for a 'nefarious' purpose" and "had no 'lawful' purpose for having a lock pick set in his backpack."  Second, the Attorney General emphasizes the evidence supporting such a

nefarious purpose, in that Bay "was clearly not a locksmith performing his job when he was contacted by the deputy on a road in rural Napa at 2:00 a.m." and "[t]he lock pick set was in a backpack with a loaded handgun, boxes of ammunition, marijuana, and a hypodermic needle."

To support his argument, the Attorney General relies on *People v. Joiner* (1988) 204 Cal.App.3d 221 (*Joiner*), in which Division Five of this court held that the failure to instruct on penetration, an "essential element of the crime of sodomy," was harmless under *Chapman*. (*Id.* at pp. 223, 227.) In reaching its holding, *Joiner* stated, "Given the uncontroverted testimony of both the victim and the examining physician, the fact that the prosecutor drew the jury's attention to the element of penetration in closing argument, and the fact that [the defendant's] only defense was alibi, it is inconceivable that, properly instructed, the jury would have found there was no penetration and acquitted [the defendant] of the sodomy charge." (*Id.* at p. 227.)

But as Bay points out, *Joiner*'s harmless-error analysis was based on language in a United States Supreme Court opinion, *Rose v. Clark* (1986) 478 U.S. 570, that has since been disapproved. *Joiner* cited *Rose* for the proposition that " '[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed.' " (*Joiner*, *supra*, 204 Cal.App.3d at p. 226, quoting *Rose*, at p. 579.) Subsequent Supreme Court jurisprudence clarified, however, that this statement from *Rose* is misleading when read "in isolation." (*Yates v. Evatt* (1991) 500 U.S. 391, 402, fn. 8, disapproved on other grounds in *Estelle v. McGuire* (1991) 502 U.S. 62, 72, fn. 4; see generally *People v. Lewis* (2006) 139 Cal.App.4th 874, 884–887.) Under *Chapman*, the relevant question "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279; see *Neder v. United States* (1999) 527 U.S. 1, 27 (conc. opn. of

Stevens, J.) [harmless-error review " 'may enable a court to remove a taint from proceedings in order to *preserve* a jury's findings, but it cannot constitutionally *supplement* those findings' "].)

Applying the correct standard, we cannot agree with the Attorney General that the prosecutor's argument, combined with "the circumstances under which [Bay] possessed" the lock pick set, "rendered the failure to instruct that [Bay] had to possess the tool with a felonious purpose harmless beyond a reasonable doubt."  This is not a case where the jury necessarily found the missing element based on other, properly given instructions.  (See *People v. Lewis*, *supra*, 139 Cal.App.4th at p. 891.)  Nor is it one of a " 'narrow class of cases' " in which the omission of an element can be held harmless because "the particular issues were . . . uncontested and indisputable" and "the factual truth of the omitted element was implicitly found by the jury." (*Id.* at pp. 888, 890.)  Rather, as in *Lewis*, the missing element here was intent, which was both contested and central to assessing guilt of the charge. (*Id.* at p. 890.)  Moreover, even if it were appropriate to consider the strength of the evidence of a felonious purpose, we would agree with Bay that the evidence presented on this point was not strong—particularly because it was unclear whether the backpack even belonged to him.  In short, we cannot conclude beyond a reasonable doubt that the instructional error did not affect the verdict, and we therefore reverse the conviction for possession of burglary tools.

*C.      The Second Prior-prison-term Enhancement Must Be Stricken on Remand.*

Finally, Bay contends that the trial court erred by imposing and staying a one-year sentence for the second prior-prison-term enhancement instead of striking the enhancement.  We accept the Attorney General's concession that the enhancement must be stricken on remand.

At sentencing, the trial court addressed Bay as follows:  "With regards to the prison priors that you admitted, I am going to increase your sentence by one year for the [first] prison prior . . . , and with regards to the second [such enhancement] I'm going to impose that one-year term and stay it.  So I'm not going to include it.  So your total

13

sentence in this matter shall be three years, eight months." The court did not address its reasons for staying the term for the second enhancement.

Under section 1385, a trial court may "strike or dismiss an enhancement" or "the additional punishment for that enhancement in the furtherance of justice." (§ 1385, subd. (b)(1).) "The trial court has no authority to stay an enhancement, rather than strike it—not, at least, when the only basis for doing either is its own discretionary sense of justice." (*People v. Lopez* (2004) 119 Cal.App.4th 355, 364; accord *People v. Brewer* (2014) 225 Cal.App.4th 98, 104.) Rather, the only authority for staying an enhancement is California Rules of Court, rule 4.447, which applies when "an enhancement that *otherwise* would have to be either imposed or stricken is barred by an overriding statutory prohibition. In that situation—and that situation only—the trial court can and should stay the enhancement." (*Lopez*, at p. 365; accord *Brewer*, at p. 104.) We agree with the parties that it appears that the trial court intended to exercise its discretion under section 1385, since there was no statute precluding Bay from being sentenced on both enhancements and rule 4.447 thus does not apply. On remand, the court is directed to strike the second enhancement.

### III.
#### DISPOSITION

The conviction for possession of burglary tools under section 466 is reversed. The sentence is vacated, and the matter is remanded for further proceedings consistent with this opinion. In all other aspects, the judgment is affirmed.

_____

Humes, P.J.

WE CONCUR:


_____

Margulies, J.


_____

Sanchez, J.


*People v. Bay*  A154498

15

Trial Court:

Superior Court of the County of Napa

Trial Judge:

Hon. Rodney G. Stone

Counsel for Defendant and Appellant:

Richard A. Tamor, Tamor & Tamor, under appointment by the Court of Appeal

Counsel for Plaintiff and Respondent:

Xavier Becerra, Attorney General

Gerald A. Engler, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

Catherine A. Rivlin, Supervising Deputy Attorney General

Bruce M. Slavin, Deputy Attorney General

*People v. Bay*  A154498