Filed 4/28/23 P. v. Hempstead CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096992 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE007349) |
| v. | |
| TYCORY TRAVON HEMPSTEAD, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Tycory Travon Hempstead asked this court to conduct an independent review of the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) We requested supplemental briefing from the parties regarding whether defendant is entitled to relief under recent changes to sentencing law, including in Senate Bill No. 81 (Stats. 2021, ch. 721, § 1)

1

(Senate Bill 81) amending Penal Code section 1385[1] to provide guidance on mitigating circumstances affecting the imposition of sentence enhancements.

In supplemental briefing, defendant contends this case should be remanded for the trial court to exercise its discretion to dismiss (1) the strike that doubled his sentence for robbery under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) as a multiple enhancement (§ 1385, subd. (c)(2)(B)), and (2) the five-year enhancement for a prior serious felony conviction (§ 667, subd. (a)) because the conviction was over five years old (§ 1385, subd. (c)(2)(H)). The People respond that defendant forfeited any claim based on section 1385 by failing to raise the issue below. We agree with the People and will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This case was the subject of a prior appeal, *People v. Hempstead* (Mar. 11, 2022, C092891) [nonpub. opn.] (*Hempstead*), from which we take the following background:

"At about 3:00 p.m. on May 6, 2020, motel employee Jonathan Valenti received complaints about room 214. Valenti went up to the room to investigate and heard a commotion. He could not see into the room and did not know what was going on inside the room. As he approached, the first thing he heard was banging against the door that sounded like a body falling against a door. Valenti knocked on the door two times and defendant opened it a couple [of] seconds later. The room was in disarray and the victim was standing behind defendant. Defendant appeared uninjured. The victim was bleeding from the back of her head and from her mouth.

"Defendant turned back into the room, walked to the back of the room, and picked up what looked like a wallet. Defendant then walked out of the room. The victim said defendant was taking her wallet. According to the motel's surveillance camera,

---

[1] Undesignated statutory references are to the Penal Code.

2

defendant went down the back staircase and jumped the fence towards the houses in the neighborhood. According to Valenti, the police arrived about five minutes after he reached the room.

"The victim called 911 and asked the dispatcher to send someone to her location. She told the dispatcher, 'My boyfriend put his hands on me, the back of my head is busted, he ran off with my money, my wallet . . . my baby is, I don't know . . . .' When asked what happened, the victim replied, 'Um, me and my boyfriend, we got into it.' She further elaborated, 'I'm the sole provider so I had all the money. He wanted to leave. He had n–no money to leave. I had already hidden my wallet. So he was getting ready to leave. And he was looking for my wallet.' The victim told the dispatcher defendant ran out the door with her wallet. She said all of this happened 15 minutes prior to her call.

"A Sacramento Sheriff's Deputy went to the motel. He interviewed the victim. The victim was upset and in tears.

"The victim told the deputy she had been in a relationship with defendant off and on over the past 14 years. The two of them had a child together. The victim informed the deputy the dispute between her and defendant started because she found some messages defendant sent to other women. The victim learned about these messages the day before the incident. She believed defendant would want to leave when confronted with this information, so she secreted her money wallet and another wallet in a baby bag and hid the baby bag under the bed.

"When the victim confronted defendant about his infidelity, he wanted her money and he wanted to leave. The victim told the deputy when she refused to give him the money, defendant punched her in the face and head approximately seven times. The victim also told the deputy she and defendant had tussled over a baby bag. She grabbed the baby bag and held it against her chest and defendant pulled on it to get it away from her. Defendant then picked her up and slammed her to the ground causing her head injury. She said once defendant got the baby bag from her, he took the wallets and then

3

left the room.

"Sheriff's deputies arrested defendant nearby shortly after the call. He had the victim's wallet with her identification and credit card and a large wad of cash. They also found the victim's other wallet in a nearby backyard in which defendant had been spotted." (*Hempstead, supra*, C092891.)

A jury found defendant guilty of felony robbery and misdemeanor intimate partner battery. (§§ 211, 243 subd. (e)(1).).) (*Hempstead, supra*, C092891.) The trial court then found that defendant had been convicted of a prior serious felony (§ 667, subds. (a) and (b)-(i)). (*Hempstead,* C092891.) The trial court sentenced defendant to 11 years, composed of the middle term of three years for robbery, doubled by the prior strike conviction, and five years for a prior serious felony conviction. (*Ibid.*) The court sentenced defendant to a consecutive term of one year in county jail for intimate partner battery and applied defendant's presentence credits to this term. (*Ibid.*)

We held the trial court erred in failing to stay defendant's sentence for intimate partner battery under section 654, given defendant's single objective to obtain the victim's money. (*Hempstead, supra*, C092891.) The parties also agreed, as did we, that the case should also be remanded for resentencing under Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1), effective January 1, 2022, which amended section 654 to give the trial court discretion to impose sentence on any offense subject to the bar on multiple punishments, rather than the current requirement that the court selects the offense with the longest potential prison term. (*Hempstead,* C092891.) We vacated the sentence and remanded it for resentencing. (*Ibid.*)

Defense counsel filed a resentencing memorandum requesting the trial court sentence defendant to the four-year term recommended in the probation report in defendant's original sentencing. The memorandum described defendant's progress while imprisoned, including his training to fight forest fires, and attached letters of support from defendant's family members and the community.

4

The trial court resentenced defendant to the same term as before. The court declined to impose a sentence based on misdemeanor intimate partner battery as the primary offense under the amendment to section 654, but rather stayed the sentence on that offense. The court also declined to strike the five-year prior conviction enhancement under section 1385.

The trial court noted defendant had 143 days of custody credit and 21 days of good time/work time credit for a total of 164 days as of the date of his original sentence. The court stated that the Department of Corrections and Rehabilitation (CDCR) would recalculate defendant's further credits up to the date of resentencing.

The trial court also imposed a $300 restitution fine (§ 1202.4, subd. (b)), and a corresponding $300 parole revocation fine (suspended unless parole is revoked) (§ 1202.45).

Defendant timely appealed this judgment.

In a letter to the superior court, defendant's appointed appellate counsel, citing *People v. Buckhalter* (2001) 26 Cal.4th 20, stated that the court erred in directing the CDCR to recalculate defendant's presentence credits, which the court itself was required to do. (Sangeeta Sinha, letter to Hon. Ernest W. Sawtelle, Nov. 17, 2022.)

In response to the letter, the trial court issued a minute order that recalculated defendant's presentence custody credits, adding 707 days for the period from the original sentencing to the date of resentencing, and directed the CDCR to recalculate defendant's additional good time/work time credits. The court issued an amended abstract of judgment.[2]

---

[2]     We sua sponte take judicial notice of the defendant's counsel's letter, the trial court's minute order in response to defense counsel's letter, and the amended abstract of judgment. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

Thereafter, defendant's appointed counsel asked this court to conduct an independent review of the record under *People v. Wende* to determine whether there are any other arguable issues on appeal. Upon review of the record, we requested the parties to provide supplemental briefing on whether defendant was entitled to relief under the amendments to section 1385 made by Senate Bill 81 or other recent changes to sentencing laws. Defendant and the People filed letter briefs contesting whether remand was warranted.

## DISCUSSION

In his supplemental brief, defendant asserts that the trial court did not recognize that it possessed discretion under section 1385, subdivision (c)(2)(B) to dismiss defendant's strike as a multiple enhancement. Defendant further maintains that, while the trial court did recognize it had the authority to strike defendant's five-year prior conviction enhancement and declined to do so, the court did not give great weight to the age of the conviction — for carjacking in 2015 (§ 215, subd. (a)) — as a factor mitigating in favor of dismissal of this enhancement (unless dismissal would endanger public safety), as required by section 1385, subdivision (c). The People respond that defendant forfeited any claim based on the amended version of section 1385 by failing to raise it at defendant's resentencing on September 2, 2022, more than nine months after the amendments went into effect on January 1, 2022. We agree with the People, and therefore do not reach the other arguments raised in the parties' supplemental briefs.

Senate Bill 81 amended section 1385 to include subdivision (c)(1)-(2),[3] which provides in relevant part: "(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion

---

[3] Effective June 30, 2022, the Legislature enacted Assembly Bill No. 200, which made technical, nonsubstantive changes to these provisions. (Stats. 2022, ch. 58, § 15.)

6

under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others. [¶] (B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] . . . . (H) The enhancement is based on a prior conviction that is over five years old."

At the resentencing hearing on September 2, 2022, the trial court stated, "I do understand that I have the right to – to strike under [section] 1385 the five-year prior and I decline to do that as well." Defendant maintains we should vacate his sentence and remand for resentencing, because the record is devoid of any indication that the trial court considered and gave great weight to dismissing the five-year prior or the strike under section 1385, subdivision (c)(2)(B) and (H).

We conclude defendant has forfeited this issue by not raising it in defendant's sentencing memorandum or at the resentencing hearing. A "defendant cannot challenge the trial court's sentencing choice for the first time on appeal because 'defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention' at the time of sentencing.' " (*People v. Flowers* (2022) 81 Cal.App.5th 680, 683-684, quoting *People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*); see also *People v. Anderson* (2023) 88 Cal.App.5th 233, 241-242.)

Defendant argues that he did not forfeit his claims based on amended section 1385, because by requesting that the trial court impose a four-year term as recommended by the probation report, defense counsel impliedly asked the trial court to dismiss the five-year enhancement under section 1385, subdivision (c)(2) and (H). Defendant points

7

out that the probation report calculated the four-year term without reference to the five-year enhancement. However, at the sentencing hearing, defense counsel asked the court to impose a four-year term based on defendant's "progress in custody and then also the support that he has in the community," which was the same argument defendant raised in his sentencing memorandum. Even if it was counsel's intent to raise section 1385, subdivision (c), these statements were not sufficient to notify the trial court that defendant was invoking a statute requiring the court to exercise its discretion to dismiss an enhancement based on the age of the prior conviction. When the trial court added five years to defendant's sentence under section 667, subdivision (a), defendant was obligated to object or otherwise inform the court that section 1385, subdivision (c) identified this enhancement as subject to dismissal. He did not, and therefore, forfeited the issue on appeal.

Next, defendant argues he did not have a meaningful opportunity to object because the trial court did not state its intended sentence before pronouncing the sentence. The court did tell the parties the sentence to be imposed and its reasoning for the sentence at some length. But the court did so after counsel for the parties had argued their positions. In *Scott, supra*, 9 Cal.4th at page 356, the court said: "Of course, there must be a meaningful opportunity to object to the kinds of claims otherwise deemed waived by today's decision. This opportunity can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices." In *People v. Gonzalez* (2003) 31 Cal.4th 745 (*Gonzalez*), the court clarified that the *Scott* rule does not require that the trial court issue a tentative ruling on the sentence it intends to impose, "if, at *any time* during the sentencing hearing, the trial court describes the sentence it intends to impose and the reasons for the sentence, and the court thereafter considers the objections of the parties before the actual sentencing." (*Id.* at p. 752.)

8

*People v. Superior Court* (*Dorsey*) (1996) 50 Cal.App.4th 1216 (*Dorsey*) illustrates what constitutes a failure by a trial court to provide a "meaningful opportunity to object" at sentencing. In *Dorsey,* the trial court placed the defendant on probation in the " 'interests of justice,' " even though he was presumptively ineligible. (*Id.* at pp. 1221-1222) After inquiring whether defendant accepted the probation terms, the trial court declared a recess without hearing from either party. (*Id.* at pp. 1223–1224; *Gonzalez, supra*, 31 Cal.4th at p. 752.) Due to the immediate recess, the *Dorsey* court held that "the prosecutor had no opportunity, meaningful or otherwise, to object." (*Dorsey,* at p. 1224; *Gonzalez,* at p. 752.)

Here, unlike *Dorsey*, the record shows that the trial court, after pronouncing the sentence and stating its reasons, therefore, did not immediately declare a recess without hearing from the parties. Instead, the court discussed various matters with the prosecutor and defense counsel, during which time defense counsel could have raised section 1385, subdivision (c). Nothing in the record indicates that the trial court would not have permitted counsel to present section 1385, subdivision (c), as authority for the trial court to dismiss the enhancements after the court pronounced the sentence. To the contrary, after pronouncing the sentence and having a discussion about credits with defense counsel, the court asked counsel, "do you want to put anything else on the record to preserve your client's rights in that area?" The court thus signaled its openness to entertain any issue the defense might wish to raise, even if only to preserve the issue for appeal.

Lastly, defendant contends that the *Scott* rule does not apply because defendant did not argue the trial court imposed the sentence in a "procedurally or factually flawed manner" (*Scott, supra*, 9 Cal.4th at p. 354), but rather that the court did not exercise its discretion under section 1385, subdivision (c). However, other courts have applied the forfeiture rule to claims that the trial court did not exercise its discretion in conformance

9

with a sentencing statute. (See, e.g., *People v. Anderson, supra*, 88 Cal.App.5th at p. 241; *People v. Flowers, supra*, 81 Cal.App.5th at pp. 683-684.)

Defendant has also waived any claim that the trial court should have dismissed his prior strike conviction under the Three Strikes law as a multiple enhancement under section 1385, subdivision (c)(2)(B) by failing to raise the issue at the resentencing hearing. We note in addition that it is well established that the Three Strikes law is an alternative sentencing scheme, not an enhancement. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 527; *People v. Jenkins* (1995) 10 Cal.4th 234, 254; *People v. Cressy* (1996) 47 Cal.App.4th 981, 991; *People v. Williams* (2014) 227 Cal.App.4th 733, 744; *People v. Frutuoz* (2017) 8 Cal.App.5th 171, 174, fn. 3; *People v. Burke* (2023) 89 Cal.App.5th 237.)

However, we modify the trial court's oral pronouncement of judgment to impose an $80 court operations assessment (§ 1465.8) and a $60 criminal conviction assessment (Gov. Code, § 70373), which may not be waived and are correctly reflected in the amended abstract of judgment.

## DISPOSITION

The oral pronouncement of judgment is modified to impose an $80 court operations assessment (§ 1465.8) and a $60 criminal conviction assessment (Gov. Code, § 70373). As modified, the judgment is affirmed.

_____\\s\\_____,
McADAM, J.*

We concur:

_____\\s\\_____,
ROBIE, Acting P. J.

_____\\s\\_____,
MAURO, J.

---

\*     Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.